In the United States District Court
For the Western District of Michigan
Lansing Division

**Lena Bally**, **Steven Butler, Gavriel Grossbard,** and **Carol Hatch**,

*Plaintiffs,*

*v.*

**Gretchen Whitmer**, in her official capacity as Governor of Michigan, **Michigan Board of State Canvassers**, **Jeannette Bradshaw**, in her official capacity as Chair of the Board of State Canvassers, **Aaron Van Langevelde**, in his official capacity as Vice-Chair of the Board of State Canvassers, **Norman D. Shinkle**, in his official capacity as a member of the Board of State Canvassers, **Julie Matuzak**, in her official capacity as a member of the Board of State Canvassers, **Wayne County Board of County Canvassers**, **Monica Palmer**, in her official capacity as Chair of the Wayne County Board of Canvassers, **Jonathan C. Kinloch**, in his official capacity as Vice-Chair of the Wayne County Board of Canvassers, **William Hartmann**, in his official capacity as a member of the Wayne County Board of Canvassers, **Allen Wilson**, in his official capacity as a member of the Wayne County Board of Canvassers, **Washtenaw County Board of Canvassers**, **Mary Hall-Thiam**, in her official capacity as a member of the Washtenaw County Board of Canvassers, **Malcom Doug Scott**, in his official capacity as a member of the Washtenaw County Board of Canvassers, **Dan Smith,** in his official capacity as a member of the Washtenaw County Board of Canvassers,

Case No.:  _1:20-cv-1088_____

# Verified Complaint for Declaratory and Injunctive Relief

**Verified Complaint**                    1

**Teena Weaver-Gordon**, in her official capacity as a member of the Washtenaw County Board of Canvassers, **Ingham County Board of Canvassers, Ted Lawson**, in his official capacity as a member of the Ingham County Board of Canvassers, **Rebecca Bahar-Cook**, in her official capacity as a member of the Ingham County Board of Canvassers, **Joe Groff**, in his official capacity as a member of the Ingham County Board of Canvassers, **Jude Wells**, in his official capacity as a member of the Ingham County Board of Canvassers, **Barb Byrum**, in her official capacity as a clerk of the Ingham County Board of Canvassers,

*Defendants.*

## Verified Complaint for Declaratory and Injunctive Relief

Plaintiffs Lena Bally, Steven Butler, Gavriel Grossbard, and Carol Hatch (collectively "Voters") complain as follows:

## Introduction

**1.** This is a civil action for declaratory and injunctive relief concerning violations of Voters' voting and equal-protection rights by election officials' inclusion of illegal Presidential Elector results in certain counties, which inclusion unlawfully dilutes Voters' lawful votes and requires invalidation of those presidential-election results in counties with evidence that sufficient illegal ballots were included in the results to change or place in doubt the results of the November 3, 2020 presidential election in this state.

**2.** Voters seek a remedy excluding presidential-election results from such counties in the certification activities for Presidential Electors described in 3 U.S.C. § 6:

**Verified Complaint**                                     2

It shall be the duty of the executive of each State, as soon as practicable after the conclusion of the appointment of the electors in such State by the final ascertainment, under and in pursuance of the laws of such State providing for such ascertainment, to communicate by registered mail under the seal of the State to the Archivist of the United States a certificate of such ascertainment of the electors appointed, setting forth the names of such electors and the canvass or other ascertainment under the laws of such State of the number of votes given or cast for each person for whose appointment any and all votes have been given or cast; and it shall also thereupon be the duty of the executive of each State to deliver to the electors of such State, on or before the day on which they are required by section 7 of this title to meet, six duplicate-originals of the same certificate under the seal of the State; and if there shall have been any final determination in a State in the manner provided for by law of a controversy or contest concerning the appointment of all or any of the electors of such State, it shall be the duty of the executive of such State, as soon as practicable after such determination, to communicate under the seal of the State to the Archivist of the United States a certificate of such determination in form and manner as the same shall have been made; and the certificate or certificates so received by the Archivist of the United States shall be preserved by him for one year and shall be a part of the public records of his office and shall be open to public inspection; and the Archivist of the United States at the first meeting of Congress thereafter shall transmit to the two Houses of Congress copies in full of each and every such certificate so received at the National Archives and Records Administration.

## Jurisdiction and Venue

**3.** This action arises under 42 U.S.C. § 1983 and the First and Fourteenth Amendments to the U.S. Constitution.

**4.** This Court has jurisdiction under 28 U.S.C. §§ 1331, 1343(a), 2201, and 2202.

**5.** Venue is proper under 28 U.S.C. § 1391(b) because one or more Defendants to this action resides in this District and all Defendants reside in this State. Alternatively, venue is proper under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claim occurred or will occur in this District.

## Parties

**6.** All Plaintiffs are eligible registered voters in this State and were qualified to, and did, vote for a presidential candidate in the November 3, 2020 presidential election in this State.

**Verified Complaint**                                          3

**7.** Plaintiff Lena Bally is an eligible and registered voter, who was qualified to, and did, vote for a presidential candidate in the November 3, 2020 presidential election in this State. She is a resident of Oakland County, Michigan.

**8.** Plaintiff Steven Butler is an eligible and registered voter, who was qualified to, and did, vote for a presidential candidate in the November 3, 2020 presidential election in this State. He is a resident of Jackson County, Michigan.

**9.** Plaintiff Gavriel Grossbard is an eligible and registered voter, who was qualified to, and did, vote for a presidential candidate in the November 3, 2020 presidential election in this State. He is a resident of Oakland County, Michigan.

**10.** Plaintiff Carol Hatch is an eligible and registered voter, who was qualified to, and did, vote for a presidential candidate in the November 3, 2020 presidential election in this State. She is a resident of Eaton County, Michigan.

**11.** All Defendants are persons authorized by federal and state law to be involved in the process of certifying Presidential Electors as described in 3 U.S.C. § 6.

**12.** Defendant Governor Gretchen Whitmer, sued in her official capacity, is required as the state "executive" to finalize, execute, and send required certificates for Presidential Electors under 3 U.S.C. § 6. Additionally, state law provides that:

> [a]s soon as practicable after the state board of canvassers has, by the official canvass, ascertained the result of an election as to electors of president and vice-president of the United States, the governor shall certify, under the seal of the state, to the United States secretary of state, the names and addresses of the electors of this state chosen as electors of president and vice-president of the United States. The governor shall also transmit to each elector chosen as an elector for president and vice-president of the United States a certificate, in triplicate, under the seal of the state, of his or her election.

Mich. Code § 168.46.

**Verified Complaint**                                          4

**13.** Defendant Michigan Board of State Canvassers is

required to canvass the returns and determine the result of all elections for electors of president and vice president of the United States . . . [and u]pon making the determination, the board of state canvassers shall immediately prepare a certificate of determination and deliver the properly certified certificate of determination to the secretary of state.

Mich. Code § 168.841(1).

**14.** Defendant Jeannette Bradshaw, in her official capacity as Chair of the Board of State Canvassers, is responsible for determining and certifying the results of the election "for electors of president and vice president of the United States." Mich. Code § 168.841(1).

**15.** Defendant Aaron Van Langevelde, in his official capacity as Vice-Chair of the Board of State Canvassers, is responsible for determining and certifying the results of the election "for electors of president and vice president of the United States." Mich. Code § 168.841(1).

**16.** Defendant Norman D. Shinkle, in his official capacity as a member of the Board of State Canvassers, is responsible for determining and certifying the results of the election "for electors of president and vice president of the United States." Mich. Code § 168.841(1).

**17.** Defendant Julie Matuzak, in her official capacity as a member of the Board of State Canvassers, is responsible for determining and certifying the results of the election "for electors of president and vice president of the United States." Mich. Code § 168.841(1).

**18.** Defendant Wayne County Board of Canvassers is responsible for canvassing the returns and certifying the results of the election for Wayne County. Mich. Code § 168.821, *et seq.*

**19.** Defendant Monica Palmer, in her official capacity as Chair of the Wayne County Board of Canvassers, is responsible for canvassing the returns and certifying the results of the election for Wayne County. Mich. Code § 168.821, *et seq.*

**Verified Complaint**           5

**20.** Defendant Jonathan C. Kinloch, in his official capacity as Vice-Chair of the Wayne County Board of Canvassers, is responsible for canvassing the returns and certifying the results of the election for Wayne County. Mich. Code § 168.821, *et seq*.

**21.** Defendant William Hartmann, in his official capacity as a member of the Wayne County Board of Canvassers, is responsible for canvassing the returns and certifying the results of the election for Wayne County. Mich. Code § 168.821, *et seq*.

**22.** Defendant Allen Wilson, in his official capacity as a member of the Wayne County Board of Canvassers, is responsible for canvassing the returns and certifying the results of the election for Wayne County. Mich. Code § 168.821, *et seq*.

**23.** Defendant Washtenaw County Board of Canvassers, is responsible for canvassing the returns and certifying the results of the election for Washtenaw County. Mich. Code § 168.821, *et seq*.

**24.** Defendant Mary Hall-Thiam, in her official capacity as a member of the Washtenaw County Board of Canvassers, is responsible for canvassing the returns and certifying the results of the election for Washtenaw County. Mich. Code § 168.821, *et seq*.

**25.** Defendant Malcom Doug Scott, in his official capacity as a member of the Washtenaw County Board of Canvassers, is responsible for canvassing the returns and certifying the results of the election for Washtenaw County. Mich. Code § 168.821, *et seq*.

**26.** Defendant Dan Smith, in his official capacity as a member of the Washtenaw County Board of Canvassers, is responsible for canvassing the returns and certifying the results of the election for Washtenaw County. Mich. Code § 168.821, *et seq*.

**27.** Defendant Teena Weaver-Gordon, in her official capacity as a member of the

**Verified Complaint**                              6

Washtenaw County Board of Canvassers, is responsible for canvassing the returns and certifying the results of the election for Washtenaw County. Mich. Code § 168.821, *et seq*.

**28.** Defendant Ingham County Board of Canvassers, is responsible for canvassing the returns and certifying the results of the election for Ingham County. Mich. Code § 168.821, *et seq*.

**29.** Defendant Ted Lawson, in his official capacity as a member of the Ingham County Board of Canvassers, is responsible for canvassing the returns and certifying the results of the election for Ingham County. Mich. Code § 168.821, *et seq*.

**30.** Defendant Rebecca Bahar-Cook, in her official capacity as a member of the Ingham County Board of Canvassers, is responsible for canvassing the returns and certifying the results of the election for Ingham County. Mich. Code § 168.821, *et seq*.

**31.** Defendant Joe Groff, in his official capacity as a member of the Ingham County Board of Canvassers, is responsible for canvassing the returns and certifying the results of the election for Ingham County. Mich. Code § 168.821, *et seq*.

**32.** Defendant Jude Wells, in his official capacity as a member of the Ingham County Board of Canvassers, is responsible for canvassing the returns and certifying the results of the election for Ingham County. Mich. Code § 168.821, *et seq*.

**33.** Defendant Barb Byrum, in her official capacity as a member of the Ingham County Board of Canvassers, is responsible for canvassing the returns and certifying the results of the election for Ingham County. Mich. Code § 168.821, *et seq*.

## Facts

**34.** The state certification of Presidential Electors prescribed in 3 U.S.C. § 6, will occur this year by December 8 (if done by the "Safe Harbor" deadline, *see* 3 U.S.C. § 5), and the Electoral

**Verified Complaint**                                         7

College will vote on December 14. Voters seek a decision from this Court well before then to allow for possible appeal as necessary, as set out in a separate motion for expedited consideration.

35. By the law of this state, the Board of County Canvassers started meeting on November 5, 2020 to canvass returns. Mich. Code §§ 168.821(1), 168.822(1). The Board of County Canvassers must complete this canvass by November 17, 2020. *Id*. at 168.822(1). Within 24 hours of completion, the clerk of the Board of County Canvassers shall deliver the results to the Secretary of State. *Id*. at 168.828.

36. If the Board of County Canvassers fails to certify the results by November 17, 2020, they must "immediately deliver to the secretary of the board of state canvassers all records and other information pertaining to the election." Mich. Code § 168.822(2). The Board of State Canvassers must then "meet immediately and make the necessary determinations and certify the results within the 10 days immediately following the receipt of the records from the board of county canvassers." *Id*.

37. The Board of State Canvassers will begin meeting on November 23, 2020 to canvass the returns, and ascertain and determine the result of the election. Mich. Code § 168.842(1). This canvass must be completed by December 13, 2020. *Id*.

38. As soon as practicable after the Board of State Canvassers has determined the results, the Governor must certify the presidential electors. Mich. Code § 168.46.

39. If the results of the presidential election have a vote deferential of less than 25,000 votes, an expedited schedule may be enforced. Mich. Code § 168.842(2).

**Verified Complaint**                              8

*Presidential-Election Results in Key Counties*

**40.** The presidential-election results for Michigan are 2,794,822 votes for Joseph R. Biden ("Biden") and 2,647,832 votes for Donald J. Trump ("Trump"). *2020 Michigan Election Results*, The Office of Secretary of State Jocelyn Benson, https://mielections.us/election/results/2020GEN _CENR.html# (last visited on November 11, 2020).

**41.** The presidential-election results for Ingham County, Michigan are 94,221 for Biden and 47,640 for Trump. *Unofficial Summary Results November 3, 2020 General Election Ingham County*, Ingham County, available at file:///C:/Users/court/Downloads/November2020ElectionSu mmaryReportRPT%20(1).pdf (last visited November 11, 2020).

**42.** The presidential-election results for Washtenaw County, Michigan are 157,130 for Biden and 56,241 for Trump. *Unofficial Election Results November 3, 2020 General Election*, Washtenaw County, available at https://electionresults.ewashtenaw.org/electionreporting/nov20 20/index.jsp (last visited November 11, 2020).

**43.** The presidential-election results for Wayne County, Michigan are 587,074 for Biden and 264,149 for Trump. *Election Summary Report November 3, 2020 - General Election Wayne County, Michigan*, Wayne County, available at https://www.waynecounty.com/elected/clerk/elect ion-results.aspx (last visited November 11, 2020).

*Sufficient Evidence Exists to Place in Doubt Presidential-Election Results in Key Counties*

**44.** There exists sufficient evidence to place in doubt the November 3 presidential-election results in identified key counties, including issues with transparency, fraudulent changing of dates, a software glitch, clerical errors, illegal votes, and many other issues and irregularities. Some of that evidence follows:

**Verified Complaint**                    9

**45.** A credentialed poll challenger was excluded from the absentee counting process, contrary to Michigan law. *See, e.g.*, *Trump v. Benson*, Case No. 20-000225-MZ. Moreover, it has been alleged that absentee counting boards conducted counts without inspectors from each party being present and that challengers were denied access to video of ballot boxes, contrary to Michigan law. *Id*. This lack of transparency casts significant doubt into the validity of votes.

**46.** "[N]umerous issues of fraud and misconduct" from Wayne County were noted in *Costanino v. City of Detroit*, Case No. 20-014780-AW, available at https://greatlakesjc.org/wp-content/uploads/Complaint-Costantino-FINAL-With-Exhibits.pdf?x44644 (last visited November 11, 2020). Complainants, represented by the Great Lakes Justice Center, summarized the following issues:

a.    Defendants systematically processed and counted ballots from voters whose name failed to appear in either the Qualified Voter File (QVF) or in the supplemental sheets. When a voter's name could not be found, the election worker assigned the ballot to a random name already in the QVF to a person who had not voted.

b.    Defendants instructed election workers to not verify signatures on absentee ballots, to backdate absentee ballots, and to process such ballots regardless of their validity.

c.    After election officials announced the last absentee ballots had been received, another batch of unsecured and unsealed ballots, without envelopes, arrived in traysat the TCF Center. There were tens of thousands of these absentee ballots, and apparently every ballot was counted and attributed only to Democratic candidates.

d.    Defendants instructed election workers to process ballots that appeared after the election deadline and to falsely report that those ballots had been received prior to November 3, 2020 deadline.

e.    Defendants systematically used false information to process ballots, such as using incorrect or false birthdays. Many times, the election workers inserted new names into the QVF after the election and recorded these new voters as having a birthdate of 1/1/1900.

f.    On a daily basis leading up to the election, City of Detroit election workers and employees coached voters to vote for Joe Biden and the Democrat party. These workers and employees encouraged voters to do a straight Democrat ballot. These election workers and employees went over to the voting booths with voters in order to watch them vote and coach them for whom to vote.

g.    Unsecured ballots arrived at the TCF Center loading garage, not in sealed ballot boxes, without any chain of custody, and without envelopes.

h.    Defendant election officials and workers refused to record challenges to their processes and removed challengers from the site if they politely voiced a challenge.

i.    After poll challengers started discovering the fraud taking place at the TCF Center, Defendant election officials and workers locked credentialed challengers out of the counting room so they could not observe the process, during which time tens of thousands of ballots were processed.

j.    Defendant election officials and workers allowed ballots to be duplicated by hand without allowing poll challengers to check if the duplication was accurate. In fact, election officials and workers repeatedly obstructed poll challengers from observing. Defendants permitted thousands of ballots to be filled out by hand and duplicated on site without oversight from poll challengers.

*Id*. More information about each allegation and evidence to support the allegations are contained within their complaint and accompanying exhibits. *See id.*

47. "Election officials in Wayne County refused to permit statutorily designated challengers to observe the conduct of the election and the processing of ballots." *See Donald J. Trump for President, Inc. v. Benson*, Case No. 1:20-cv-01083, available at https://cdn.donaldjtrump.com/public-files/press_assets/1.-11-10-20-trump-v.-benson-w.d.-mich.-complaint-final.pdf(last visited November 11, 2020). This included being denied meaningful opportunity to observe the counts; denial of access to the facility; denial of re-entry; lack of replacement of Republican challengers; social distancing enforced in a partisan manner; blocking by election officials; being forced to observe at unreasonable distances; windows being covered to prevent viewing; and intimidation, threatening, and harassment by election officials. *See id*. at ¶¶ 26-37.

48. Election officials also ignored and disregarded valid challenges. *Id*. at ¶¶ 38-41.

49. Challengers were prohibited from observing the ballot duplication process, which were only performed by Democrats. *Id*. at ¶¶ 42-44.

50. Officials counted ineligible ballots. *Id*. at ¶¶ 45-53. This includes ballots being repeatedly run through tabulation machines, mismatched ballots being counted, illegal addition of vot-

**Verified Complaint**                              11

ers into poll books, counting of ballots with no voter record, ballots counted without signature or postmark, ballots counted that all contained the same signature, ballots being "corrected" then counted, the counting of provisional ballots, officials changing ballots, harvested ballots being dropped off, counting of deceased voters, etc. *Id*.

**51.** Moreover, "[s]ome election officials pre-dated ballots that were not eligible to be counted by altering the date the ballot was received." *Id*. at ¶¶ 54-55.

**52.** Ballots were allowed to be dropped into unattended drop boxes, contrary to Michigan law. *Id*. at ¶¶ 56-59.

**53.** Michigan postal workers were issued a directive to collect an ballots, separate them, and hand stamp them with the previous day's date. *Michigan USPS Whistleblower Details Directive From Superiors To Back-Date Late Mail-In-Ballots Nov 3*, Project Veritas, available at https://www.youtube.com/watch?v=fS6xOuhsiJw (last visited November 11, 2020). This directive was given on November 4, 2020, the day after the election. *Id*. Michigan law requires that votes be received "before the close of the polls on election day." Mich. Code § 168.764A. This directive was an obvious attempt to circumvent Michigan law and count late votes. It is unclear how many illegal ballots were accepted and counted as a result of this scheme.

**54.** There have been reports that "[m]ore than 10,000 people confirmed or suspected dead have returned their mail-in ballots to vote in Michigan." *More Than 10,000 Dead People Cast Ballots in Michigan, Analysis Shows*, The Epoch Times, available at https://www.theepoch times.com/10000-dead-people-returned-mail-in-ballots-in-michigan-analysis-shows_3573209.ht ml?utm_source=news&utm_medium=email&utm_campaign=breaking-2020-11-10-2 (last visited November 11, 2020).

**Verified Complaint** 12

**55.** GOP Chairwoman Ronna McDaniel detailed "131 affidavits and 2,800 incident reports documenting fraud and other irregularities in the election in Michigan." *Massive Election Corruption Documented in Michigan*, Powerline, available at https://www.powerlineblog.com/archives/2020/11/massive-election-corruption-documented-in-michigan.php (last visited November 11, 2020).

**56.** In particular, she highlighted "there are thousands of reports of poll watchers being intimidated and unable to do their job" in Wayne County. *Id*.

**57.** GOP challengers allege that they were prohibited from accessing the absentee ballot counting board in Detroit, creating a serious lack of transparency. *Officials say their claims are weak*, Bridge Michigan, available at https://www.bridgemi.com/michigan-government/gop-calls -michigan-election-probe-officials-say-their-claims-are-weak (last visited November 11, 2020).

**58.** GOP Chairwoman Ronna McDaniel also detailed reports from a whistleblower alleging: "being told by a supervisor to backdate ballots that came in after the legal deadline; witnessing poll workers encouraging voters to vote straight Democrat; and even poll workers going into the booths with voters." *Massive Election Corruption Documented in Michigan*, Powerline, available at https://www.powerlineblog.com/archives/2020/11/massive-election-corruption-documented-in -michigan.php (last visited November 11, 2020); *see also Officials say their claims are weak*, Bridge Michigan, available at https://www.bridgemi.com/michigan-government/gop-calls-mich igan-election-probe-officials-say-their-claims-are-weak (last visited November 11, 2020) (detailing allegations of Detroit poll workers being ordered to change the date on ballots, contrary to Michigan law which requires that votes be received "before the close of the polls on election day[,]" (Mich. Code § 168.764A)).

**Verified Complaint**                              13

**59.** To further exacerbate the transparency issue, poll workers in Detroit covered the windows of the polling center, preventing challengers and inspectors from viewing the counting process. *WATCH: Allegations of violations fly as Michigan polling centre covers up windows*, PM, available at https://thepostmillennial.com/watch-allegations-of-violations-fly-as-michigan- polling-centre-covers-up-windows (last visited November 11, 2020); Republican AGs Tweet, available at https://twitter.com/RepublicanAGs/status/1324360088371552260?utm_source=Sailthru &utm_medium=email&utm_campaign=20201107_Weekend_Jolt&utm_term=Jolt-Smart (last visited November 11, 2020). This lack of transparency, as is required by Michigan law, justifies validation of votes.

**60.** There is also evidence of suitcases and coolers being moved into a secure voting center in Detroit in the early morning hours of 1 to 5 AM. *VIDEO: Wagons, Suitcases, and Coolers Roll Into Detroit Voting Center at 4 AM*, Texas Scorecard, available at https://texasscorecard.com/ federal/video-wagons-suitcases-and-coolers-roll-into-detroit-voting-center-at-4-am/ (last visited November 11, 2020). This raises significant security concerns that places the validity of votes in question. It also makes clear that reasonable safeguards were not in place in Wayne County.

**61.** There are reports of "vote dumps" around 4 AM where Biden received almost 100% of those votes. *There is Undeniable Mathematical Evidence the Election is Being Stolen*, The Red Elephants, available at https://theredelephants.com/there-is-undeniable-mathematical-evidence-the-election-is-being-stolen/ (last visited November 11, 2020).

**62.** In Antrim County, a software glitch caused at least 6,000 ballots to be counted for Democrats that were actually cast for Republicans. *Michigan GOP chairwoman says software glitch tallied thousands of Republican votes as Democrat*, Fox News, available at https://www.foxnew

**Verified Complaint**                                14

s.com/politics/michigan-gop-chairwoman-says-software-glitch-tallied-thousands-of-republican-v

otes-as-democrat (last visited November 10, 2020). Similar glitches could have affected many

other Michigan counties, as it has been reported that 69 of Michigan's 83 counties use the same

software. *Human error, Dominion voting equipment fuel false fraud claims in Michigan*, Bridge

Michigan, available at https://www.bridgemi.com/michigan-government/human-error-dominion-

voting-equipment-fuel-false-fraud-claims-michigan (last visited November 11, 2020). *See also*

*Donald J. Trump for President, Inc. v. Benson*, Case No. 1:20-cv-01083, at ¶¶ 60-67 available at

https://cdn.donaldjtrump.com/public-files/press_assets/1.-11-10-20-trump-v.-benson-w.d.-mich.-

complaint-final.pdfa (last visited November 11, 2020) (detailing the error and highlighting that

"Secretary Benson fail[ed] to address is what would have happened if no one 'discover[ed] the

error,' for instance, in Wayne County, where the number of registered voters is much greater than

Antrim County, and where the tabulators were not individually tested.").

**63.** Wayne County uses the same software as Antrim and "tested only a single one of its vote

tabulating machines before the election." *Id*. at ¶ 4.

**64.** There were also clerical errors which resulted in thousands of ballots being given to

Democrats, even though they were republican ballots. *Officials say their claims are weak*, Bridge

Michigan, available at https://www.bridgemi.com/michigan-government/gop-calls-michigan-

election-probe-officials-say-their-claims-are-weak (last visited November 11, 2020)*.*

**65.** Specifically, in Oakland County, it was initially reported that Adam Kochenderfer lost by

a few hundred votes. However, after an error was found and fixed, Kochenderfer was found to

have won by over 1,000 votes. *There is Undeniable Mathematical Evidence the Election is Being*

*Stolen*, The Red Elephants, available at https://theredelephants.com/there-is-undeniable-mathema

**Verified Complaint**                                    15

tical-evidence-the-election-is-being-stolen/ (last visited November 11, 2020).

**66.** A Republican candidate for state legislature initially only received two votes, an error that was later corrected. *Election Program 'Issue' Tallied Only 2 Votes for GOP Candidate, 33 MI Counties Thought To Be Using the Same Software*, The Western Journal, available at https://www.westernjournal.com/election-program-issue-tallied-2-votes-gop-candidate-33-mi co unties-thought-using-software/?ff_source=facebook&ff_medium=huckabee (last visited November 10, 2020). Of particular note, the program that caused the error is used by at least 33 other Michigan counties. *Id*.

**67.** There are also reports of multiple ballots being sent to a single address. Mark Springer, a Michigan resident, received seven mail-in ballot delivered to his mailbox. *Joint Senate and House Committee move to investigate voting fraud allegations,* WILX10, available at https://www.wilx.com/2020/11/07/michigan-joint-senate-and-house-committee-move-to-investig ate-voting-fraud-allegations/ (last visited November 11, 2020).

**68.** Over 50 Michigan counties, including Wayne and Washtenaw, had "more registered voters than eligible voting-age citizens". *New Judicial Watch Study Finds 353 U.S. Counties in 29 States with Voter Registration Rates Exceeding 100%*, Judicial Watch, available at https://www.judicialwatch.org/press-releases/new-jw-study-voter-registration/ (last visited November 11, 2020). Of particular relevance here, Wayne County registration rate was 107% and Washtenaw County was 113%. *Id*. This alone raises suspicion of the accuracy and validity of the election.

**69.** As a result of the many issues and irregularities, the Michigan Legislature is convening an oversight committee to evaluate the Michigan election and counting procedures. *GOP calls*

**Verified Complaint**                    16

*for Michigan election probe. Officials say their claims are weak*, Bridge Michigan, available at https://www.bridgemi.com/michigan-government/gop-calls-michigan-election-probe-officials-say-their-claims-are-weak (last visited November 11, 2020); *Michigan Legislature issues subpoena to state election officials in rare Saturday hearing*, Detroit Free Press, available at https://www.freep.com/story/news/politics/elections/2020/11/07/gop-state-lawmakers-issue-subpoena-michigan-election-records/6203094002/ (last visited November 11, 2020).

**70.** Additionally, a Joint Senate and House Committee is investigating claims of voting fraud in Michigan. *Joint Senate and House Committee move to investigate voting fraud allegations*, WILX10, available at https://www.wilx.com/2020/11/07/michigan-joint-senate-and-house-committee-move-to-investigate-voting-fraud-allegations/ (last visited November 11, 2020).

**71.** Finally, federal investigators are also looking into the State's fraud issues. *Federal Investigators Arrive in Michigan After Voter Fraud Allegation Video Goes Viral*, The Western Journal, available at https://www.westernjournal.com/federal-investigators-arrive-michigan-voter-fraud-allegation-video-goes-viral/?utm_source=facebook&utm_medium=huckabee&fbclid=IwAR2oz7ZNyzd4iujKVnbsF5URQz42xGqRMahRWZ1q8G_Iij4s6o_wWspBh0I (last visited November 11, 2020).

**72.** This evidence suffices to place in doubt the November 3 presidential-election results in identified counties and/or the state as a whole. Indeed, issues with thousands of votes cast warrants investigation of the rest.

***Further Evidence To Be Provided From Relevant Records***

**73.** In addition to the foregoing evidence, Voters will provide evidence, upon information and belief, that sufficient illegal ballots were included in the results to change or place in doubt

**Verified Complaint**        17

the November 3 presidential-election results. This will be in the form of expert reports based on data analysis comparing state mail-in/absentee, provisional, limited ballot, and poll-book records with state voter-registration databases, United States Postal Service ("USPS") records, Social Security records, criminal-justice records, driver's license and state ID records, and other governmental and commercial sources by using sophisticated and groundbreaking programs to determine the extent of illegal voters and illegal votes, including double votes, votes by ineligible voters, votes by phantom (fictitious) voters, votes by incarcerated persons, non-citizen votes, illegal ballot harvesting, and pattern recognition to identify broader underlying subversion of the election results. Plaintiffs have persons with such expertise and data-analysis software already in place who have begun preliminary analysis of available data to which final data, such as the official poll list, will be added and reports generated.

**74.** Upon information and belief, the expert report will identify persons who cast votes illegally by casting multiple ballots, were deceased, had moved, or were otherwise not qualified to vote in the November 3 presidential election, along with evidence of illegal ballot stuffing, ballot harvesting, and other illegal voting. This evidence will be shortly forthcoming when the relevant official documents are final and available, for which discovery may be required, and the result of the analysis and expert reports based thereon will show that sufficient illegal ballots were included in the results to change or place in doubt the November 3 presidential-election results.

**75.** Plaintiffs have no adequate remedy at law and will suffer serious and irreparable harm unless the injunctive relief requested herein is granted.

**Verified Complaint**                    18

# Claims

### Count I
### Certifying Presidential Electors Without Excluding Certain Counties Would Violate Voters' Fundamental Right to Vote by Vote-Dilution Disenfranchisement.
### (42 U.S.C. § 1983; U.S. Const. amends. 1 and 14)

**76.** Plaintiffs re-allege and incorporate by reference all of the allegations contained in all of the preceding paragraphs.

**77.** Certifying Presidential Electors without excluding certain counties would violate voters' fundamental right to vote by vote-dilution disenfranchisement.

**78.** The counties at issue are those identified in the Facts where sufficient illegal ballots were included in the results to change or place in doubt the November 3 presidential-election results.

**79.** The right to vote, with the included right to have one's vote counted, is protected by the First and Fourteenth Amendments and is fundamental, *Harper v. Va. State Bd. of Elections*, 383 U.S. 663, 667 (1966), and well-established: "Undeniably the Constitution of the United States protects the right of all qualified citizens to vote, in state as well as in federal elections" and to have that vote counted, *Reynolds v. Sims*, 377 U.S. 533, 554 (1964).

**80.** "The right to vote can neither be denied outright, nor destroyed by alteration of ballots, nor diluted by ballot-box stuffing." *Id.* at 555 (internal citations omitted). "And the right of suffrage can be denied by a debasement or dilution of the weight of a citizen's vote just as effectively as by wholly prohibiting the free exercise of the franchise." *Id.*

**81.** If Defendants certify presidential-election results from counties where sufficient illegal ballots were included in the results to change or place in doubt the November 3 presidential-election result, Voters valid, legal votes will be unconstitutionally diluted by illegal votes.

**Verified Complaint**       19

**82.**  As recognized in *Donald J. Trump for President v. Bullock*, 2020 WL 5810556 (D.

Mont. Sept. 30, 20200, individual voters have standing to bring a vote-dilution disenfranchise-

ment claim, *id.* at *7 & n.4. "[T]he Supreme Court has repeatedly enumerated the principle that

claims alleging a violation of the right to vote can constitute an injury in fact despite the wide-

spread reach of the conduct at issue." *Id.* at 7. *See also Gill v. Whitford*, 138 S. Ct. 1916, 1929

(2018) ("[A] person's right to vote is 'individual and personal in nature,'" so "'voters who allege

facts showing disadvantage to themselves as individuals have standing to sue' to remedy that dis-

advantage" (citations omitted)). Under the generalized-grievance formulations in *Lujan v. De-*

*fenders of Wildlife*, 504 U.S. 555 (1992), this claim is not a generalized grievance. *Lujan* said it

turns on whether a plaintiff (i) is merely asserting "citizen" standing, i.e., the same claim that

could be asserted by "every citizen," and (ii) just trying to make the government do its job. *Id.* at

560-61. Voters don't bring their claims under mere "citizen" standing but rather assert personal

harms from the violation of their own fundamental right to vote. Their claim is particularized,

challenging only what violates their rights. Their harm is not the same as for every "citizen."

"[D]enying standing to persons who are in fact injured simply because many others are also in-

jured, would mean that the most injurious and widespread Government actions could be ques-

tioned by nobody." *United States v. SCRAP*, 412 U.S. 660, 686-68 (1973); *see also, FEC v.*

*Akins*, 524 U.S. 11, 24 (1998). Voters' harm is four levels more specific than "every citizen['s]"

for their claim: (1) within "citizens" are those eligible to register as voters—only they have the

potential to become registered voters; (2), within eligible voters are registered voters—only they

have a right to vote; (3) within eligible, registered voters are those who actually voted—only they

have a vote subject to vote-dilution disenfranchisement; and (4) within these eligible, registered,

**Verified Complaint**                                  20

voters who actually voted are those in a jurisdiction where there are counties with evidence that sufficient illegal ballots were included in the results to change or place in doubt the results of the November 3 presidential election. Those very specific voters with a very specific claim don't assert a generalized grievance, and they include Voters. Thus, Voters have standing.

**83.** As established in the Facts discussion, existing and forthcoming evidence establish that in identified counties illegal voting has occurred in connection with the presidential-election results, which establishes that Voters' votes have been unconstitutionally diluted. So the presidential-election elections in those counties should be invalidated and not included in the certification of votes for selecting Presidential Electors.

**84.** The relevant standard for invalidating election results from a particular jurisdiction generally is that "'the party contesting the election demonstrates an irregularity or illegality sufficient to change or place in doubt the result.'" 26 Am. Jur. 2d Elections § 389 (quoting *Gore v. Harris*, 772 So.2d 1234 (Fla. 2000), *rev'd on other grounds*, *Bush v. Gore*, 531 U.S. 98 (2000)). "Ordinarily, an election may be contested only for matters that would impeach the fairness of the result." *Id.* (citing *Duncan v. McMurray*, 249 S.W.2d 156 (Ky. 1952); *Appeal of Soucy*, 649 A.2d 60 (N.H. 1994); *Fielding v. South Carolina Election Com'n*, 408 S.E.2d 232 (S.C. 1991). "An election will not be invalidated unless the party contesting the election demonstrates an irregularity or illegality sufficient to change or place in doubt the result." *Id.* (citing *Middleton v. Smith*, 539 S.E.2d 163 (Ga. 2000)).

**85.** In *Harris*, the Florida statute included as grounds for contesting an election "'Receipt of a number of illegal votes or rejection of a number of legal votes sufficient to change or place in doubt the result of the election.'" 772 So.2d at 1250 (citation and emphasis omitted). *Harris*

**Verified Complaint**                                      21

summarized the standard thus: "It is not enough to show a reasonable possibility that election results could have been altered by such irregularities, or inaccuracies, rather, a reasonable probability that the results of the election would have been changed must be shown." *Id.* at 1255.

**86.** This generally recognized standard is reflected in this State's laws. *See, e.g. Vorva v. Plymouth-Canton Cmty. Sch. Dist.,* 658–59, 584 N.W.2d 743, 746 (Mich. S. Ct. 1998) ("[i]t has been repeatedly held by [the Michigan Supreme Court] that irregularities in the conducting of an election will not invalidate the action taken unless it appears that the result was, or may have been affected thereby." (quoting *Rosenbrock v. School Dist. No. 3, Fractional*, 74 N.W.2d 32 (Mich. S. Ct. 1955); *Attorney Gen. v. McQuade*, 53 N.W. 944, 945 (Mich. S. Ct. 1892) ("When the result, as shown by the returns, is false and fraudulent, and it is impossible to ascertain the actual vote from the other evidence in the case, the vote of such poll must be wholly rejected.").

**87.** Regarding evidence for invalidating election results in a jurisdiction, *Harris* established that the required showing could be made (inter alia) by "credible statistical evidence" establishing a changed election outcome "by a preponderance of a reasonable probability," *id.*:

> In this case, there is no credible statistical evidence, and no other competent substantial evidence to establish by a preponderance of a reasonable probability that the results of the statewide election in the State of Florida would be different from the result which has been certified by the State Elections Canvassing Commission.

**88.** In addition to *states* routinely providing for invalidating election results, including in the Presidential Electors context, the U.S. Supreme Court *itself* in *Bush*, 531 U.S. 98, required that partial recounts in some counties (that unconstitutionally employed different and unclear standards for determining voter intent) be excluded from the final count in the Florida 2000 presidential election because of the constitutional flaws identified, *id.* at 107-12.

**Verified Complaint**                            22

**89.** The foregoing articulations of the standard for invalidating election results in a particular jurisdiction—including proof of reasonable probability by credible statistical evidence—should be applied here to determine whether the election results in certain counties should be excluded for purposes of certifying Presidential Electors. In some situations where election results are invalidated, a new election is ordered. *See, e.g.*, *Pabey v. Pastrick*, 816 N.E.2d 1138 (Ind. 2004). But with the Electoral College scheduled to be certified by December 8 and to meet and vote on December 14, 2020, there is insufficient time for a new election in the counties involved. Moreover, the Electoral College is unique and statutory provisions provide special procedures for moving the Electoral College vote along expeditiously since the presidency is at issue. So the proper remedy here is to exclude the results from jurisdictions meeting the standard for disqualifying elections from the final results that are certified and reported for Presidential Electors.

**90.** Because illegal votes dilute legal votes, the evidence establishes, and will establish, that the rights of Voters have been violated by vote-dilution disenfranchisement. Consequently, the presidential-election results from the counties identified should not be included in certified and reported totals for Presidential Electors from this state.

## Prayer for Relief

**91.** Declare that the inclusion of illegal votes in identified counties violates Voters' right to vote under the First and Fourteenth Amendment by vote-dilution disenfranchisement.

**92.** Declare that the proper remedy for this constitutional violation as applied to presidential-election results is to exclude presidential-election results from those counties for the Presidential Elector certification under 3 U.S.C. § 6 for this state.

**93.** Under that remedy, declare that there is sufficient evidence that illegal votes were

**Verified Complaint**                                    23

counted in the identified county or counties to change or place in doubt the results of the November 3, 2020 presidential election results in contested counties, or in the state overall, so that the county's presidential-election results must be invalidated.

**94.** Enjoin Defendants from preparing and conducting the certification activities for Presidential Electors described in 3 U.S.C. § 6 (and applicable state law implementing the federal provision) without excluding the presidential-election results from the identified counties.

**95.** Award Voters their costs and attorneys fees under 42 U.S.C. § 1988 and any other applicable authority; and

**96.** Grant any and all other such relief as this Court deems just and equitable.

Date: November 11, 2020                     Respectfully Submitted,

/s/ Maxwell Goss
Maxwell Goss (MI #P78594)
 max@maxwellgoss.com
Maxwell Goss, PLLC
370 E. Maple Rd., Third Floor
Birmingham, Michigan 48009
Telephone: 248/266-5879
*Local Counsel for Plaintiffs*

James Bopp, Jr. (IN #2838-84)*
 jboppjr@aol.com
Richard E. Coleson (IN #11527-70)*
 rcoleson@bopplaw.com
Courtney Turner Milbank (IN #32178-29)*
 cmilbank@bopplaw.com
True the Vote, Inc.
 Validate the Vote Project
THE BOPP LAW FIRM, PC
1 South Sixth St.
Terre Haute, IN 47807-3510
Telephone: 812/232-2434
*Lead Counsel for Plaintiffs*

*\* Application for admission forthcoming*

**Verified Complaint**                     24

## Verification

I, _Lena Bally_, declare as follows:

**1.** I am a resident of Michigan.

**2.** If called upon to testify, I would testify competently as to the matters set forth in the fore-going *Verified Complaint for Declaratory and Injunctive Relief.*

**3.** I verify under penalty of perjury under the laws of the United States of America that the factual statements in this *Verified Complaint for Declaratory and Injunctive Relief* concerning me and my past and intended activities are true and correct to the best of my knowledge and understanding. 28 U.S.C. § 1746.

Executed on November _11_, 2020.

# Verification

I, _Steven Butler_, declare as follows:

**1.** I am a resident of Michigan.

**2.** If called upon to testify, I would testify competently as to the matters set forth in the foregoing *Verified Complaint for Declaratory and Injunctive Relief.*

**3.** I verify under penalty of perjury under the laws of the United States of America that the factual statements in this *Verified Complaint for Declaratory and Injunctive Relief* concerning me and my past and intended activities are true and correct to the best of my knowledge and understanding. 28 U.S.C. § 1746.

Executed on November _10_, 2020.

_Steven Butler_

## Verification

I, *Gavriel Grossbard*, declare as follows:

**1.** I am a resident of Michigan.

**2.** If called upon to testify, I would testify competently as to the matters set forth in the foregoing *Verified Complaint for Declaratory and Injunctive Relief.*

**3.** I verify under penalty of perjury under the laws of the United States of America that the factual statements in this *Verified Complaint for Declaratory and Injunctive Relief* concerning me and my past and intended activities are true and correct to the best of my knowledge and understanding. 28 U.S.C. § 1746.

Executed on November 10, 2020.

_____

## Verification

I, *CAROL A. HATCH*____, declare as follows:

**1.** I am a resident of Michigan.

**2.** If called upon to testify, I would testify competently as to the matters set forth in the foregoing *Verified Complaint for Declaratory and Injunctive Relief.*

**3.** I verify under penalty of perjury under the laws of the United States of America that the factual statements in this *Verified Complaint for Declaratory and Injunctive Relief* concerning me and my past and intended activities are true and correct to the best of my knowledge and understanding. 28 U.S.C. § 1746.

Executed on November _10_ , 2020.

*Carol A. Hatch*