# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MICHIGAN

LENA BALLY; *et al.*,

               Plaintiffs,

    v.

GRETCHEN WHITMER, in her capacity as Governor of Michigan; *et al.*,

               Defendants.

Civil Action No.: 20-cv-01088

Honorable Janet T. Neff

**MEMORANDUM IN SUPPORT OF MOTION OF NON-PARTIES MICHIGAN STATE CONFERENCE NAACP, WENDELL ANTHONY, YVONNE WHITE, AND ANDRE WILKES TO INTERVENE AND FOR LEAVE TO FILE A RESPONSIVE PLEADING ON THE SAME SCHEDULE AS DEFENDANTS**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES…..……………………………………ii

I.  INTRODUCTION………………………………………………1

II.  FACTUAL BACKGROUND…………………………………..3

    A.  Plaintiffs Seek to Undo Michigan's Efforts to Ensure
        that All Lawfully Cast Votes Are Counted…………………3

    B.  The Organizational Applicant Is an Organization That
        Promotes the Interests of Voters and Has Members Who
        Would Be Disenfranchised by the Relief Plaintiffs Seek……..4

    C.  The Individual Applicants Are Voters Who Would Be
        Disenfranchised by the Relief Plaintiffs Seek…………………5

III. APPLICANTS ARE ENTITLED TO INTERVENE AS A
    MATTER OF RIGHT…………………………………………...7

    A.  The Motion to Intervene Is Timely……………………………7

    B.  Applicants Have Sufficient Interest in This Litigation…………8

    C.  Disposition of this Case May Impair Applicants' Interests……11

    D.  The Interests of Existing Defendants May Diverge from Those
        of Applicants………………………………………………..12

IV.  IN    THE  ALTERNATIVE,  THE  COURT  SHOULD
    GRANT PERMISSIVE INTERVENTION……………………14

V.  THE COURT SHOULD GRANT APPLICANTS LEAVE TO
    FILE A RESPONSIVE PLEADING ON THE SAME
    SCHEDULE AS DEFENDANTS………………………………16

VI.  CONCLUSION………………………………………………..17

i

# TABLE OF AUTHORITIES

**Cases**

*Am. Farm Bureau Fed'n v. Envtl. Prot. Agency*, 278 F.R.D. 98 (M.D. Pa. 2011) ....... 12, 13

*Blount-Hill v. Zelman*, 636 F.3d 278 (6th Cir. 2011) ........................................................ 8

*Bradley v. Milliken*, 828 F.2d 1186 (6th Cir. 1987) ...................................................... 8

*Brumfield v. Dodd*, 749 F.3d 339 (5th Cir. 2014) ........................................................ 11

*Common Cause Ind. v. Lawson*, 937 F.3d 944 (7th Cir. 2019) ................................... 10

*Commonwealth of Pa. v. President of United States of Am.*, 888 F.3d 52
(3d Cir. 2018) ............................................................................................................ 7, 9

*Crawford v. Marion Cnty. Election Bd.*, 472 F.3d 949 (7th Cir. 2007) ........................ 10

*Dillard v. Chilton Cty. Comm'n*, 495 F.3d 1324 (11th Cir. 2007) ............................... 14

*Donald J. Trump for President, Inc. v. Boockvar*, No. 4:20-cv-02078-MWB
(Nov. 12, 2020, M.D. Pa.) ........................................................................................ 3, 15

*Donaldson v. United States*, 400 U.S. 517 (1971) ......................................................... 8

*Fla. State Conf. of N.A.A.C.P. v. Browning,* 522 F.3d 1153 (11th Cir. 2008) .................. 10

*Ind. State Conf. of NAACP v. Lawson,* 326 F. Supp. 3d 646 (S.D. Ind. 2018) ................. 12

*Issa v. Newsom*, No. 2:20-cv-01044, 2020 WL 3074351, at *3
(E.D. Cal. June 10, 2020) .......................................................................................... 10

*Kleissler v. U.S. Forest Serv.*, 157 F.3d 964 (3d Cir. 1998) ....................................... 7, 14

*Kobach v. U.S. Election Assistance Comm'n*, No. 13-cv-04095, 2013 WL 6511874
(D. Kan. Dec.12, 2013) .......................................................................................... 11, 13

*LaRoque v. Holder*, No. 1:10-cv-00561 (D. D.C. Aug. 25, 2010) .................................. 11

*League of United Latin Am. Citizens, Dist. 19 v. City of Boerne*, 659 F.3d 421
(5th Cir. 2011) ............................................................................................................... 8

*League of Women Voters of Michigan v. Johnson*, 902 F.3d 572 (6th Cir. 2018) ............. 17

*Meek v. Metro. Dade County*, 985 F.2d 1471 (11th Cir. 1993) ..........................................13

*Michigan State AFL-CIO v. Miller*, 103 F.3d 1240 (6th Cir. 1997) .........7, 8, 11, 12, 14, 15

*Nat'l Wildlife Fed'n v. Ruckelshaus*, 99 F.R.D. 558 (D.N.J. 1983).....................................15

*Northeast Ohio Coalition for Homeless v. Husted*, 696 F.3d 580 (6th Cir. 2012) ..............8

*OCA-Greater Houston v. Texas*, 867 F.3d 604 (5th Cir. 2017)...........................................10

*Pierce v. Allegheny Cty. Bd. of Elections*, 324 F. Supp. 2d 684 (W.D. Pa. 2003) ..............8

*Pub. Interest Legal Found., Inc. v. Winfrey*, 463 F.Supp.3d 795 (E.D. Mich. 2020)... 11, 17

*Purnell v. City of Akron*, 925 F.2d 941 (6th Cir. 1991) .........................................................7

*Seneca Res. Corp. v. Twp. of Highland,Elk Cty.*, 863 F.3d 245 (3d Cir. 2017) ................12

*Texas v. United States*, 798 F.  3d 1108 (D.C. Cir.  2015) ..................................................11

*Trbovich v. United Mine Workers of Am.,* 404 U.S. 528 (1972) ........................................12

*United States v. Territory of V.I.*, 748 F.3d 514 (3d Cir. 2014)..........................................13

## Rules

Fed. R. Civ. P. 24(b)...................................................................................................3, 15, 16

The Michigan State Conference NAACP ("NAACP-MI") (the "organizational Applicant") and Wendell Anthony, Yvonne White, and Andre Wilkes (together, the "individual Applicants") (collectively, "Applicants") submit this memorandum in support of their Motion to Intervene as Defendants as a matter of right pursuant to Rule 24(a) of the Federal Rules of Civil Procedure or, in the alternative, for permissive intervention pursuant to Rule 24(b); and for leave to file and serve their response to the Complaint on the same schedule as Defendants.

## I.   INTRODUCTION

Plaintiffs have launched an all-out attack on votes cast by Black voters in the November 3 Michigan General Election.  Faced with making up a state-wide 150,000 vote gap resulting from an election conducted with remarkable efficiency and transparency in the midst of a global pandemic, Plaintiffs seek to stop Michigan, and in particular Wayne County, home to the City of Detroit and by far the largest concentration of Black voters in the state, from certifying the results of the election. Plaintiffs do so on the basis of the untenable and untrue allegation that Republican vote "challengers" were denied extraordinary access to the counting process to which they claim to believe they were entitled.  No court has ever granted the relief requested by Plaintiffs—to disallow votes and enjoin certification of an election because of alleged lack of access to observe the vote canvassing process.  To do so at the cost of hundreds of thousands of votes lawfully cast—not coincidentally in a county with the largest Black population in Michigan—would be unprecedented and

unlawful.  Further, it is unconscionable and would severely undermine faith in the integrity of both this nation's elections and judicial processes.

Applicants are critical participants in these actions. As of now, they would be the only parties in the case that represent the interests of individual voters and are well-situated to defend the rights of all Michigan voters, and in particular of Black voters, to have their votes count.  The individual Applicants are voters whose lawfully cast ballots would be thrown out if Plaintiffs obtain the relief they seek. The organizational Applicant, the NAACP-MI, is a nonpartisan organization representing the interests of its approximately 20,000 Michigan members—many (perhaps most) of whose votes would also be thrown out—and dedicated to eliminating barriers to voting and increasing civic engagement among its members and in traditionally disenfranchised communities.

Applicants are entitled to intervene as a matter of right under Federal Rule of Civil Procedure 24(a)(2) because: (1) Applicants filed this motion without delay; (2) Applicants have legally protectable interests in ensuring their lawfully cast ballots are counted; (3) the relief Plaintiffs seek would harm Applicants' interests; and (4) Applicants' interests – the counting of their votes – is distinct from those of the named Defendants.

Alternatively, Applicants should be permitted to intervene under Rule 24(b). Because Applicants seek leave to directly challenge Plaintiffs' attempt to disenfranchise *hundreds of thousands* of voters, their claims and defenses

necessarily share common questions of law and fact with the main action, and Applicants' motion would neither delay nor prejudice the orderly adjudication of Plaintiffs' claims.   The NAACP-Pennsylvania State Conference, other public-interest organizations, and individual voters were today granted permissive intervention in a very similar case brought by the Trump campaign in the Middle District of Pennsylvania. *Donald J. Trump for President, Inc. v. Boockvar*, No. 4:20-cv-02078-MWB, Document 72 (Nov.  12, 2020, M.D.  Pa.) (hereinafter "*Boockvar*") (a copy is attached hereto as Exhibit 1).[1]

## II.   FACTUAL BACKGROUND

### A.   Plaintiffs Seek to Undo Michigan's Efforts to Ensure that All Lawfully Cast Votes Are Counted.

Plaintiffs seek relief, among other requests, 1) declaring that "illegal votes in identified counties" violate the Constitution; 2) declaring the remedy for this "constitutional violation" is exclusion of presidential election results from those identified counties; 3) declaring that there is "sufficient evidence" of "illegal votes" to change the results of the presidential election; and 3) enjoining the Governor and the Michigan Board of State Canvassers from certifying the results of the 2020 General Election without excluding these so-called "illegal votes" Comp, 23-24.

Plaintiffs' 96-paragraph Complaint contains a litany of allegations that

---

[1] The Pennsylvania court did not address whether the intervenors there were entitled to intervention as a matter of right, "because [the court] readily find[s] that they satisfy the requirements for permissive intervention under Fed. R. Civ. P. 24(b)."  *Boockvar*, at 1-2.

purportedly support these requests for relief.  Plaintiffs are wrong on the facts and the law, and Applicants seek to intervene in this action to protect the interests of individual voters whose fundamental right to vote is under attack and to provide the perspective of an organization whose mission is to facilitate full and fair participation in the electoral process.  Applicants have at least as much of an interest in the outcome of this litigation as Defendants.  Indeed, as voters who stand to be disenfranchised if Plaintiffs get their unprecedented relief, the individual Applicants' and the NAACP's members' interest is arguably greater.  *See Jansen v.  City of Cincinnati,* 904 F.2d 336 (6th Cir.  1990) (allowing intervention as of right to class of black fire fighters in challenge by white fire fighters to city's diversity hiring program, finding that the city would not adequately protect their interests).

### B.   The Organizational Applicant Is an Organization That Promotes the Interests of Voters and Has Members Who Would Be Disenfranchised by the Relief Plaintiffs Seek

The NAACP-MI is a non-profit advocacy group for civil rights for Black Americans.   NAACP-MI includes 32 local units with approximately 20,000 members, a significant portion of whom are registered voters who are now at risk of being unlawfully deprived of their right to vote.  *Id.*  ¶9-11.  A large portion of the NAACP-MI's membership, approximately 13,000, are Wayne County residents.  *Id.* ¶12.  The NAACP-MI is dedicated to eliminating barriers to voting and increasing civic engagement among its members and in traditionally disenfranchised communities.  *Id.*, ¶¶ 13-20.   Indeed, one of the NAACP-MI's organizational

missions is to ensure that all eligible Michigan citizens are given a full and equal opportunity to exercise their fundamental right to vote.  *Id*.  ¶13.  The NAACP-MI expends substantial resources on voter education and turnout efforts.  For this election, the NAACP-MI's efforts have included providing accurate information to voters on how to cast in-person, mail-in, and absentee ballots to ensure that voters have a full and fair opportunity to participate in spite of the unprecedented circumstance of the election taking place during a global pandemic.  *Id.*  The NAACP's focuses on strategies, including litigation, to eliminate Black voter suppression in Michigan.  *Id.*, ¶¶ 13-20.  The NAACP-MI has members who would be disenfranchised if Plaintiffs obtained the relief they seek, including members who voted by mail-in ballot in Wayne County, members who voted in person in Wayne County, and members outside of Wayne County.

### C.   The Individual Applicants Are Voters Who Would Be Disenfranchised by the Relief Plaintiffs Seek.

Intervenor-Defendant Andre Wilkes is a 19-year-old Black registered voter and resident of Oakland County.  Wilkes Dec., ¶¶3-5.  Due to concerns about the COVID-19 pandemic, he applied for and received a no-excuse absentee ballot for the November 3, 2020 election.  *Id.*  ¶6.  He submitted his absentee ballot in-person at the City of Oak Park Clerk's Office on October 29, 2020.  *Id.*, ¶7.  Mr. Wilkes is very concerned that the relief Plaintiffs seek in this case will invalidate his vote and deprive him of his right to have his democratic voice heard in his community and country.  *Id.*  ¶¶8-10.

5

Intervenor-Defendant Reverend Wendell Anthony is a 70-year-old Black registered voter and resident of Wayne County.  Anthony Dec.  ¶¶3-5.  Due to concerns about the COVID-19 pandemic, he applied for and received a no-excuse absentee ballot for the November 3, 2020 election.  *Id.*  ¶6.  He submitted his absentee ballot in-person and verified through the Michigan Voter Information website that it had been received.  *Id.*  ¶7.  Reverend Anthony testifies that it would be outrageous if his legally cast and counted vote were invalidated due to the relief Plaintiffs seek in this case.  *Id.*  ¶8.  Reverend Anthony believes that this lawsuit and others are specifically targeted at Black communities and cities in an undemocratic attempt to deprive them of their right to vote.  *Id.*  ¶9.

Intervenor-Defendant Yvonne White is the President of the NAACP-MI. White Dec. ¶9.  President White is also a registered voter and resident of Wayne County.  *Id.*  ¶3-4.  On November 3, 2020, President White voted in-person at her designated polling location.  *Id.*  ¶5.  President White is very concerned that the relief Plaintiffs seek in this case will deprive her of her right to have her democratic voice heard.  *Id.*  ¶6-7.

The relief sought by Plaintiffs in this case, which would invalidate a disproportionate number of votes legally cast by eligible Black voters, would adversely affect many individual members of the NAACP-MI.  *Id.*  ¶¶20-21.  Such an outcome would also adversely affect the NAACP-MI's mission, in that it would be forced to dedicate additional resources to voter education efforts and voting rights

litigation, at the expense of other organizational priorities, in order to overcome the sense of futility among eligible voters that would result. *Id.* ¶¶22-24.

## III.   APPLICANTS ARE ENTITLED TO INTERVENE AS A MATTER OF RIGHT.

Applicants satisfy the criteria to intervene as of right under Federal Rule of Civil Procedure 24(a).  Applicants have a right to intervene upon establishing: "(1) timeliness of the application to intervene, (2) the applicant's substantial legal interest in the case, (3) impairment of the applicant's ability to protect that interest in the absence of intervention, and (4) inadequate representation of that interest by parties already before the court." *Michigan State AFL-CIO v.  Miller*, 103 F.3d 1240, 1245 (6th Cir. 1997).  The Sixth Circuit has emphasized that Rule 24 should be "broadly construed in favor of potential intervenors." *Purnell v. City of Akron*, 925 F.2d 941, 950 (6th Cir. 1991).  When the four requirements of Rule 24(a) are satisfied, intervention is mandatory.  *Kleissler v. U.S. Forest Serv.*, 157 F.3d 964, 974 (3d Cir.  1998); *see also Commonwealth of Pa. v. President of United States of Am.*, 888 F.3d 52, 60 (3d Cir. 2018).  Applicants have satisfied those requirements.

### A.    The Motion to Intervene Is Timely.

This motion, which is being filed two days after Plaintiffs initiated this action, is undoubtedly timely.  *See Michigan State AFL-CIO*, 103 F.3d at 1245 (finding application timely when it was filed two weeks after the complaint).  Applicants' prompt intervention will not delay the advancement of this action or otherwise prejudice the parties, and all of the relevant circumstances show this application is

timely. *See Blount-Hill v. Zelman*, 636 F.3d 278, 284 (6th Cir. 2011) (timeliness to be "evaluated in the context of all relevant circumstances"). Applicants' motion to intervene is timely for purposes of Rule 24.

### B. Applicants Have Sufficient Interest in This Litigation.

Applicants have a "sufficient"—*i.e.*, a "significantly protectable"—interest in the litigation. *Donaldson v. United States*, 400 U.S. 517, 531 (1971). The Sixth Circuit has "opted for a rather expansive notion of the interest sufficient to invoke intervention of right." *Michigan State AFL-CIO*, 103 F.3d at 1245; *see Bradley v. Milliken*, 828 F.2d 1186, 1192 (6th Cir. 1987) ("[T]his court has acknowledged that 'interest' is to be construed liberally.")

The interest of the individual Applicants and organizational members is simple: Voters who legally cast ballots in the 2020 election have a significantly protectable interest in ensuring their ballots are counted. *See League of United Latin Am. Citizens, Dist. 19 v. City of Boerne*, 659 F.3d 421 (5th Cir. 2011) (finding a legally protectable interest where the intervenor sought to protect his right to vote). The Constitution "accords special protection for the fundamental right of voting, recognizing its essential role in the 'preservati[on] of all rights." *Northeast Ohio Coalition for Homeless v. Husted*, 696 F.3d 580, 591 (6th Cir. 2012) (citations omitted). *See also Pierce v. Allegheny Cty. Bd. of Elections*, 324 F. Supp. 2d 684, 694–95 (W.D. Pa. 2003) ("The right of qualified electors to vote . . . is recognized

as a fundamental right, . . . extend[ing] to all phases of the voting process, [and applying] equally to the initial allocation of the franchise as well as the manner of its exercise.").

Likewise, the NAACP-MI has an interest in protecting one of the core missions of the organization—ensuring that its members, and all citizens of Michigan, are given a full and equal opportunity to exercise their fundamental right to vote—which it has dedicated considerable effort to advancing. *See Commonwealth of Pa. v. President of United States of Am.*, 888 F.3d at 58 (permitting a religious group to intervene based on its interest in preserving the religious exemption achieved through prior litigation efforts, where the religious organization was described as an "impetus for change").

The NAACP-MI is committed to eliminating barriers to voting and increasing civic engagement, especially in communities that have been traditionally disenfranchised. In pursuit of that mission, it engages in robust voter-registration, voter-education, and get-out-the-vote activities, expending considerable resources to ensure that eligible voters in Michigan can exercise their right to vote. Discarding ballots that have been lawfully cast would undermine the organization's voter-advocacy efforts by leading some voters to believe that voting is pointless because their ballots will not be counted, making it more difficult and more expensive for the NAACP-MI to carry out its mission in the future. The threat of frustration of this core voter-enfranchisement mission gives the NAACP-MI a significantly

protectable interest in this litigation.  *See, e.g.*, *Common Cause Ind. v. Lawson*, 937 F.3d 944, 950 (7th Cir. 2019) ("[A] voting law can injure an organization enough to give it standing by compelling [it] to devote resources to combatting the effects of that law that are harmful to the organization's mission.").

The NAACP-MI also has an interest in ensuring that legally cast ballots are not discarded because that would force the organization to divert resources from other organizational priorities to educate members and other voters about their rights and the severe restrictions on voting that Plaintiffs seek to impose.  *See, e.g.*, *OCA-Greater Houston v. Texas*, 867 F.3d 604, 610-12 (5th Cir. 2017) (finding standing where an organization was required to dedicate additional resources to assisting voters navigate the polls); *Fla. State Conf. of N.A.A.C.P. v. Browning,* 522 F.3d 1153, 1164-65 (11th Cir. 2008); *Crawford v. Marion Cnty. Election Bd.*, 472 F.3d 949, 951 (7th Cir. 2007), *aff'd*, 553 U.S. 181 (2008); *Issa v. Newsom*, No. 2:20-cv-01044, 2020 WL 3074351, at *3 (E.D. Cal. June 10, 2020).  If Plaintiffs were to obtain the relief they seek, the NAACP-MI would be forced to commit resources immediately to respond to questions from members and voters about the status of their lawfully cast ballots in this election.   In addition, the diversion of the organization's resources would continue into future years, as it would need to dedicate larger portions of its staff and monetary resources toward ensuring that members' votes are not rejected.  These efforts will come at the expense of other organizational priorities.

Finally, courts routinely find that public interest organizations, such as the NAACP-MI, should be granted intervention in voting and other election-related cases, recognizing the significantly protectable interests such organizations have in the electoral process. *See, e.g.*, *Texas v. United States*, 798 F. 3d 1108, 1111 (D.C. Cir. 2015); *Pub. Interest Legal Found., Inc. v. Winfrey*, 463 F.Supp.3d 795 (E.D. Mich. 2020); *Kobach v. U.S. Election Assistance Comm'n*, No. 13-cv-04095, 2013 WL 6511874 (D. Kan. Dec.12, 2013); *LaRoque v. Holder*, No. 1:10-cv-00561 (D. D.C. Aug. 25, 2010). This case is no exception.

### C.    Disposition of this Case May Impair Applicants' Interests.

Applicants also satisfy the third prong of the intervention analysis because the disposition of this action may impair or impede their ability to protect their interests. Applicants need not show that their interests "will" be impaired by disposition of the litigation; they need show "only that impairment of [their] substantial legal interest is *possible* if intervention is denied." *Michigan State AFL-CIO*, 103 F.3d at 1247; *see also Brumfield v. Dodd*, 749 F.3d 339, 344 (5th Cir. 2014) (holding that proposed intervenor need show only that its interest "may" be impaired). "This burden is minimal." *Michigan State AFL-CIO*, 103 F.3d at 1247.

The individual Applicants, the NAACP-MI's members, and many other Michigan voters are in jeopardy of being stripped of their fundamental right to vote. Applicants' rights thus undoubtedly stand to "be affected by a proposed remedy in this case." *See Seneca Res. Corp. v. Twp. of Highland, Elk Cty.*, 863 F.3d 245, 257

(3d Cir. 2017).  The individual Applicants could have their lawfully cast ballots tossed out.  The NAACP is at risk of losing its ability to protect its interests and those of its members in voter participation.  These concerns of voter disenfranchisement are amplified with respect to the underrepresented minority communities that the NAACP-MI serves.  "Historically . . . throughout the country, voter registration and election practices have interfered with the ability of minority, low-income, and other traditionally disenfranchised communities to participate in democracy." *Ind. State Conf. of NAACP v. Lawson,* 326 F. Supp. 3d 646, 650 (S.D. Ind. 2018), *aff'd*, 937 F.3d 944 (7th Cir. 2019).  The NAACP-MI has worked to remedy those practices, in part, by ensuring that their voter-registration, voter-education, and get-out-the-vote efforts reach vulnerable and underserved minority communities.  Thus, the organization has a significant interest in ensuring that Plaintiffs' proposed relief does not harm those communities.

> ### D.     The Interests of Existing Defendants May Diverge from Those of Applicants.

Applicants also meet the "minimal" burden of demonstrating that the existing parties in the litigation may not protect their interests.  *Trbovich v. United Mine Workers of Am.,* 404 U.S. 528, 538 n.10 (1972); *Michigan State AFL-CIO*, 103 F.3d at 1247 ("this burden is minimal because it is sufficient that the movant[ ] prove that representation may be inadequate").  "The possibility that the interests of the applicant and the parties may diverge need not be great," *Am. Farm Bureau Fed'n v. Envtl. Prot. Agency*, 278 F.R.D. 98, 110 (M.D. Pa. 2011), and a proposed

intervenor need show only that, "although [its] interests are similar to those of a party, they diverge sufficiently that the existing party cannot devote [them] proper attention," *United States v. Territory of V.I.*, 748 F.3d 514, 519–20 (3d Cir. 2014).

Here, the interests of the Applicants are distinct and may diverge from those of the governmental Defendants. *See Am. Farm Bureau Fed'n,* 278 F.R.D. at 110-11 (public interest groups allowed to intervene in litigation in which EPA was a defendant, "[b]ecause the EPA represents the broad public interest . . . not only the interests of the public interest groups" and similar stakeholders). While the Defendants may have a generalized interest in upholding the law, they do not have a direct interest in protecting the validity of their own votes, as do the individual Applicants and the NAACP-MI's members, or in ensuring the broad voter access that is fundamental to the mission of the NAACP-MI. *See Kobach v. U.S. Election Assistance Comm'n*, No. 13-cv-4095- EFM-DJW, 2013 WL 6511874, at *4 (D. Kan. Dec. 12, 2013) (applicants who had shown their interests in protecting voter rights, particularly in minority and underprivileged communities, might have private interests that diverge from the public interest of the defendant Election Assistance Commission); *see also, e.g.*, *Meek v. Metro. Dade County*, 985 F.2d 1471, 1478 (11th Cir. 1993), ("The intervenors sought to advance their own interests in achieving the greatest possible participation in the political process. Dade County, on the other hand, was required to balance a range of interests likely to diverge from those of the intervenors."), *abrogated on other grounds by Dillard v. Chilton Cty.*

*Comm'n*, 495 F.3d 1324 (11th Cir. 2007).

Moreover, there are a number of issues, positions, and claims that a governmental entity may raise that are critical to public-interest organizations such as the NAACP-MI.  Unlike Defendants, who  are broadly responsible for the management of elections, the interests of Applicants are personal to these individuals, to the organization's members, and particularly to the Black community whose voting rights are under siege from Plaintiffs.  Their right to vote—indeed, their right to have the lawful votes they have already cast counted—is at risk.  As the Third Circuit has recognized: "[W]hen an agency's views are necessarily colored by its view of the public welfare rather than the more parochial views of a proposed intervenor whose interest is personal to it, the burden [of establishing inadequacy of representation] is comparatively light." *Kleissler*, 157 F.3d at 972; *see also Michigan State AFL-CIO*, 103 F.3d at 1247-1248 (recognizing that the interests of the proposed private intervenor Chamber of Commerce and of the defendant Secretary of State might diverge, although they purported to seek the same litigation outcome).

## IV.    IN THE ALTERNATIVE, THE COURT SHOULD GRANT PERMISSIVE INTERVENTION.

Even if the Court determines that Applicants are not entitled to intervene as a matter of right, the Court should exercise its broad discretion to grant permissive intervention.  A court may grant permissive intervention when the motion to intervene is timely and the applicant "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b).  In exercising

its discretion, "the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." *Id*. The decision of a district court to permit intervention will be upheld unless it constitutes an abuse of discretion. *Michigan State AFL-CIO*, 103 F.3d at 1248.

Applicants easily satisfy the threshold requirements for permissive intervention here. Their motion is timely, and they seek to assert defenses that squarely address the factual and legal premise of Plaintiffs' claims, including but not limited to whether (wrongly) alleged noncompliance with Michigan law regarding the observation of ballot canvassing requires that this court throw out hundreds of thousands of ballots that were lawfully cast and overturn the result of the Michigan General Election. *See Boockvar*, *supra*, at 2-3 (holding that NAACP and individual members satisfied the Rule 24(b) requirements for permissive intervention).

Permissive intervention is especially appropriate where, as here, Applicants may meaningfully contribute to the proper development of the factual or legal issues in dispute. *See Nat'l Wildlife Fed'n v. Ruckelshaus*, 99 F.R.D. 558, 561 (D.N.J. 1983). Applicants expect to present a perspective on key legal and factual issues that is different from that of the Defendants and the other parties in this case.

In particular, the individual Applicants and the NAACP-MI's members are themselves among the individual voters whose ballots Plaintiffs seek to discard. Furthermore, the NAACP-MI will be able to present a unique perspective based on

15

its deep experience educating, registering, and assisting voters in Michigan counties and constituent communities.  The NAACP-MI, the NAACP affiliates in other states, and Applicants' counsel have litigated hundreds of voting rights cases and have experience analyzing claims such as those asserted here and the evidence related to them.  Applicants and their counsel will draw on this national experience and their history representing populations most likely to be impacted by the relief that Plaintiffs seeks in framing their defense of this litigation.  The NAACP-MI also represents thousands of Michigan voters who, along with individual Applicants, would potentially be disenfranchised if Plaintiffs are successful in this litigation.

Granting Applicants' Motion at this early stage of the case would not delay or prejudice the adjudication of the original parties' rights.  *See* Fed. R. Civ. P. 24(b). By contrast, refusing to permit intervention would deprive Applicants of the chance to defend their significant and protectable interests in the litigation.

## V.    THE COURT SHOULD GRANT APPLICANTS LEAVE TO FILE A RESPONSIVE PLEADING ON THE SAME SCHEDULE AS DEFENDANTS.

Applicants further move for leave to file a responsive pleading on the same date that the current Defendants file a pleading in response to the Complaint.  This Court has discretion to grant a motion to intervene that is not accompanied by a pleading where no prejudice will result to the other parties.  Indeed, the Sixth Circuit has held that the failure to attach a proposed pleading is not a valid basis for denying an otherwise proper motion to intervene.  *See Public Interest Legal Foundation, Inc.*

*v. Winfrey*, 463 F.Supp.3d at 802 (citing *League of Women Voters of Michigan v. Johnson*, 902 F.3d 572, 580 (6th Cir. 2018)).  The Sixth Circuit takes "a lenient approach to the requirements of Rule 24(c)," especially where the parties have not identified any prejudice that would result from granting a motion to intervene despite the failure to attach a pleading.  *League of Women Voters of Michigan*, 902 F.3d 580.  This motion is being filed at the very outset of the litigation, and granting this motion in the absence of a proposed responsive pleading will not delay or prejudice any party, as Defendants have themselves not yet filed a responsive pleading and this Memorandum provides sufficient notice of the basis for intervention and the defenses that Applicants will assert.  For these reasons, Applicants request leave to file a responsive pleading on the same schedule as Defendants.

## VI.    CONCLUSION

For the reasons stated above, the Court should grant Applicants' motion to intervene as of right or, in the alternative, for permissive intervention and to file a responsive pleading on the same schedule as Defendants.


Dated: November 14, 2020                    Respectfully submitted,

<u>/s/ Eugene Driker</u>
Eugene Driker (P12959)
Stephen E.  Glazek (P23186)
Barris, Sott, Denn & Driker, P.L.L.C.
333 West Fort Street, Suite 1200
Detroit, MI  48226
(313) 965-9725
edriker@bsdd.com
sglazek@bsdd.com

Kristen Clarke
Jon Greenbaum
Ezra Rosenberg
LAWYERS COMMITTEE FOR CIVIL RIGHTS
UNDER LAW
1500 K Street NW, Suite 900
Washington, DC 20005
Telephone: (202) 662-8300
kclarke@lawyerscommittee.org
jgreenbaum@lawyerscommittee.org
erosenberg@lawyerscommittee.org

*Counsel for Proposed Intervenor-*
*Defendants*

**CERTIFICATE OF WORD COUNT**

I HEREBY CERTIFY on this 14th day of November that the above

memorandum contains fewer than 4,300 words (4,210).

<u>/s/ Eugene Driker</u>

## **CERTIFICATE OF SERVICE**

I hereby certify that on this date, the foregoing memorandum of law in support of motion to intervene was filed electronically and served on Plaintiffs' counsel of record via the ECF system of the U.S. District Court for the Western District of Michigan; and via e-mail on counsel for defendants.


Dated: November 14, 2020

/s/  Eugene Driker